## Case No. 15,167.

UNITED STATES v. FRICTION–MATCH MACHINERY.

[1 Hask. 32.] [1]

District Court, D. Maine. Dec.. 1866.

INTERNAL REVENUE—FORFEITURE—PERSONAL PROPERTY.

1. A water-wheel, used for propelling machinery in the manufacture of friction-matches, is not personal property and liable to forfeiture under section 48 of the act of 1864 [13 Stat. 240], as amended by chapter 184 of the act of 1866 [14 Stat. 98].

2. Machines, used in a mill for such purpose, are implements and instruments within the meaning of the act, and are liable to forfeiture.

Information by the United States, claiming a forfeiture of tools and machinery used in the manufacture of friction matches, in violation of the internal revenue laws. The claimant alleged. that the articles seized were fixtures and not liable to seizure under the acts of congress as personal property.

George F. Talbot. U. S. Dist. Atty.

Irving W. Parker, for claimant.

FOX, District Judge. This is a proceeding in rem under the act of 1866, c. 184, against certain machinery, seized by the collector of internal revenue of the First district as forfeited under the provisions of the acts relating to internal revenue, being found on the premises of Mason & Smith in Buxton, with a large quantity of friction-matches, there manufactured and to be sold in violation of law. On the return day of the process, one Benj. M. Mason appeared and filed his claim for a portion of the articles seized, viz., one water-wheel, one lathe, lathe-bench and turning tools, one card-planer, one grindstone and bench, one lathe-machine, one machine for making match-splints, one face-planer for

planing ends of match-blocks. and one plain crosscut-saw, alleging that he was a bona fide purchaser from Mason & Smith, of the mill and lot on which the above enumerated machinery was at the time of the conveyance, and that all such machinery passed as a part of the realty to him by the conveyance, which was valid Oct. 22. 1866, the seizure having been made on the 7th of Nov., 1866. It is admitted, that Mason & Smith procured this machinery and placed it in the mill for the manufacture of friction-match-blocks, the principal part of it being expressly adapted to that business. and that, previous to the conveyance to the claimant, the machinery had been used by Mason & Smith in manufacturing matches to be sold in violation of law, a large quantity of which was found in the mill with the machinery at time of seizure. This machinery was all driven by the water-wheel, being connected by bands and gearing, and can be removed without damage being done to the building.

The government claims, that this property was subject to seizure and forfeiture under the 48th section of act of 1864 [13 Stat. 240], as amended by act of 1866, c. 184 [14 Stat. 98]. The language is "and also all tools, implements, instruments, and personal property whatsoever, in the place or building, &c., may also be seized by any collector or deputy-collector as aforesaid, and the same shall be forfeited."

Were these articles "tools, implements, instruments." within the meaning of the act? I think most of them were. They were adapted to the business then carried on, and although ordinarily described as machines, yet they were "implements." "instruments." for the manufacture of friction-matches, and as such, were within the mischief to be reached by the law. I am aware, that the supreme court of Maine has decided, that articles. commonly designated as machinery, can not be deemed "tools" under the law of the state, exempting a debtor's "tools of trade" from attachment; and if "tools" had been alone used in the statute. I might have adopted that construction; but we are not restricted to that word: the statute forfeits all "implements and instruments;" lathes, grindstones, cut-saws, although driven by water or horse-power, are still implements and instruments, used in the production of these articles, in violation of law. And I think it is not a strained or forced construction of the statute, to hold them subject to its provisions. the same as smaller tools or articles worked wholly by hand. Under the law of distraint, "implements of trade" are exempt when in use; and I find looms, thrashing-machines and other things of like description have been exempted, and decided to be implements. I prefer to adopt this construction, and as this word is found in the act in question, to hold that all these articles of machinery, specially designed for the match business, are subject to seizure and condemnation.

---

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

It is contended that these articles had become parts of the realty, and so were not personal property, but passed under the conveyance of the mill to the claimant as fixtures.

In themselves they were still of a personal character, liable to be removed from the mill, and to pass, when so removed, by a common bill of sale, as any other article of personal property.

If Mason & Smith had given to another party a bill of sale of these articles, and afterward had conveyed the mill excepting these articles in the conveyance, can there be a doubt, that the purchaser would be entitled to them under his bill of sale? I think not. They were therefore still personal property for certain purposes, and I think for seizure and condemnation under the statute should be so considered, if the same in other respects would be liable.

A grindstone is ordinarily driven by hand, and would be liable to seizure and condemnation. Can it vary the case because it connects by a cord with the shaft and derives its power from the main wheel? A lathe is very commonly driven by a treadle, and if so would be liable to seizure. Shall it be exonerated because it is connected by belting and gearing with the main shaft of the mill?

I am well aware of the decision of the supreme court of this state in Parsons v. Copeland, 38 Me. 537, holding machinery in a woolen mill to be fixtures, although not permanently affixed, and that this decision is not found in Symonds v. Harris, 51 Me. 14; but these are local decisions which cannot control me in the construction of an act of congress, which should receive the same construction in every state of the Union. The supreme court of Maine probably would hold, that the machinery in controversy in this case would pass with the mill as a portion of the realty, if in the mill at the time of the conveyance, but it does not necessarily follow under the act of congress, that it would not be liable to seizure and forfeiture.

I think that the principle to be deduced from Hellawell v. Eastwood, 3 Eng. Law & Eq. 563, should govern this case. It was there decided as late as 1850, by the court of exchequer, that spinning-machines, which were fixed by screws, some into the wooden floor, and some into lead which had been poured in a melted state into holes in the stone for the purpose of receiving screws, had thereby become fixtures, so that they were not distrainable. I do not think the gearing made the machinery in the present case fixtures, not liable to seizure.

The water-wheel however, I do not consider as within this class of machinery. Judge Story, more than forty years ago, held that the water-wheel of a factory and its gearing was a part of the realty, and I believe no one has ever questioned it since. Most of the other articles, I understand to have been machinery specially designed for the manufacture of matches, and in my view were within the provisions of the statute. Any other construction would tend to defeat the purposes of the act, whereas, by this construction, every inducement is held forth to manufacturers to comply with its provisions, and thereby avoid its penalty. Decree accordingly.